QUATTLEBAUM, Circuit Judge:
 

 This case arises from Sheriff Michael L. Chapman's decision not to re-appoint Mark F. McCaffrey as a deputy sheriff in Loudoun County, Virginia. In response, McCaffrey sued Sheriff Chapman, the Board of Supervisors of Loudoun County and Loudoun County (collectively "Appellees"). McCaffrey alleges that Sheriff Chapman did not re-appoint him because he supported Sheriff Chapman's political opponent during the re-election campaign. McCaffrey claims that Sheriff Chapman's failure to re-appoint him for his political disloyalty violated his First Amendment rights to freedom of political association and speech. The district court found that the
 
 Elrod
 

 -
 

 Branti
 
 doctrine, which permits public officials to fire certain employees for their support of a political opponent, precludes McCaffrey's First Amendment claims. Therefore, the district court dismissed McCaffrey's complaint. For the reasons that follow, we affirm.
 

 I.
 

 A.
 

 A sheriff has the power, under Virginia law, to appoint deputy sheriffs.
 
 [1]
 
 Appointments of deputy sheriffs technically expire at the end of a sheriff's four-year term, even if the sheriff is re-elected. In practice, deputy sheriffs are routinely re-appointed after each election.
 

 McCaffrey started working in the Loudoun County Sheriff's Office ("LCSO") in 2005.
 
 [2]
 
 In 2008, he began working as a major crimes detective serving as a lead detective in complex, high-profile cases. McCaffrey supported Sheriff Chapman when he first ran for sheriff in 2011. However, when Sheriff Chapman ran for re-election in 2015, McCaffrey supported his opponent.
 

 McCaffrey placed a sign in his yard in support of Sheriff Chapman's opponent and served as a delegate to the Republican convention in which the Republican candidate for sheriff was chosen. McCaffrey also participated as an outside advisor in the screening of local candidates for potential endorsement by the Board of Directors of the local chapter of the Virginia Police Benevolent Association. McCaffrey did not speak publicly about the election. He did not wear campaign apparel or accessories. He did not use his LCSO position in support of Sheriff Chapman's opponent.
 

 Sheriff Chapman viewed McCaffrey's support of his opponent as disloyal. McCaffrey's colleagues warned McCaffrey
 that there would be consequences for his disloyalty.
 

 After Sheriff Chapman won re-election, McCaffrey received a letter informing him that his appointment as a deputy sheriff would not be renewed. In addition to not reappointing McCaffrey, Sheriff Chapman lowered McCaffrey's score on his final performance evaluation to prevent McCaffrey from receiving a bonus. Sheriff Chapman also interfered with McCaffrey's opportunity to be considered for a law enforcement position sponsored by the LCSO and a nearby municipal police department.
 

 B.
 

 In response to Sheriff Chapman's actions, McCaffrey filed a complaint against Appellees in Virginia state court. McCaffrey alleged that Sheriff Chapman's decision not to re-appoint him violated his First Amendment rights to freedom of political association and speech under both the United States and the Virginia Constitution. Appellees removed the case to federal court based on federal question jurisdiction.
 

 Appellees then moved to dismiss McCaffrey's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Appellees asserted that Sheriff Chapman's decision not to re-appoint McCaffrey fell squarely within an exception to the First Amendment known as the
 
 Elrod
 

 -
 

 Branti
 
 exception. As described more fully below, the
 
 Elrod
 

 -
 

 Branti
 
 exception, when applicable, allows public officials to terminate public employees for supporting a political opponent.
 

 After oral argument, the district court found that the
 
 Elrod
 

 -
 

 Branti
 
 exception applied and dismissed McCaffrey's complaint.
 
 [3]
 
 McCaffrey appealed the order of the dismissal. We have jurisdiction of this appeal pursuant to
 
 28 U.S.C. § 1291
 
 .
 

 II.
 

 A.
 

 This Court reviews a district court's grant of a motion to dismiss de novo.
 
 Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,
 

 591 F.3d 250
 
 , 253 (4th Cir. 2009). In exercising this de novo review, we follow the well-settled standard for evaluating a motion to dismiss.
 

 A plaintiff's complaint must set forth "a short and plain statement ... showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8"does not require 'detailed factual allegations.' "
 
 Ashcroft v. Iqbal
 
 ,
 
 556 U.S. 662
 
 , 678,
 
 129 S.Ct. 1937
 
 ,
 
 173 L.Ed.2d 868
 
 (2009) (quoting
 
 Bell Atl. Corp. v. Twombly
 
 ,
 
 550 U.S. 544
 
 , 555,
 
 127 S.Ct. 1955
 
 ,
 
 167 L.Ed.2d 929
 
 (2007) ). But a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "
 
 Id
 
 . at 677,
 
 129 S.Ct. 1937
 
 . "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
 
 Id
 
 . at 678,
 
 129 S.Ct. 1937
 
 .
 

 In considering a motion to dismiss under Rule 12(b)(6), a court "accepts all well-pled facts as true and construes
 these facts in the light most favorable to the plaintiff. ..."
 
 Nemet
 
 ,
 
 591 F.3d at 255
 
 . However, a court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."
 
 Edwards v. City of Goldsboro
 
 ,
 
 178 F.3d 231
 
 , 244 (4th Cir. 1999).
 

 B.
 

 On appeal, McCaffrey alleges that the district court erred by dismissing his First Amendment claims. McCaffrey's appeal implicates two doctrines that provide exceptions to the First Amendment's protections.
 

 The first doctrine is known as the
 
 Elrod
 
 -
 
 Branti
 
 exception. Generally, the First Amendment's right to freedom of political association prohibits government officials from terminating public employees solely for supporting political opponents. However, under the
 
 Elrod
 
 -
 
 Branti
 
 exception, certain public employees can be terminated for political association in order to give effect to the democratic process.
 
 See
 

 Branti v. Finkel
 
 ,
 
 445 U.S. 507
 
 ,
 
 100 S.Ct. 1287
 
 ,
 
 63 L.Ed.2d 574
 
 (1980) ;
 
 Elrod v. Burns
 
 ,
 
 427 U.S. 347
 
 ,
 
 96 S.Ct. 2673
 
 ,
 
 49 L.Ed.2d 547
 
 (1976).
 

 The second doctrine is known as the
 
 Pickering
 
 -
 
 Connick
 
 doctrine. The First Amendment's right to freedom of speech generally prohibits dismissals of employees in retaliation for the exercise of protected speech. However, under the
 
 Pickering
 
 -
 
 Connick
 
 doctrine, the First Amendment does not protect public employees from termination when their free speech interests are outweighed by the government's interest in providing efficient and effective services to the public.
 
 See
 

 Connick v. Myers
 
 ,
 
 461 U.S. 138
 
 ,
 
 103 S.Ct. 1684
 
 ,
 
 75 L.Ed.2d 708
 
 (1983) ;
 
 Pickering v. Board of Education
 
 ,
 
 391 U.S. 563
 
 ,
 
 88 S.Ct. 1731
 
 ,
 
 20 L.Ed.2d 811
 
 (1968).
 

 As noted above, the district court dismissed McCaffrey's complaint finding that Chapman's decision to not re-appoint McCaffrey did not violate the First Amendment because it fell within the
 
 Elrod
 
 -
 
 Branti
 
 exception. The district court did not address the
 
 Pickering
 
 -
 
 Connick
 
 doctrine. We address these doctrines in turn.
 

 C.
 

 Turning to the
 
 Elrod
 

 -
 

 Branti
 
 exception, we first review the case law that establishes and interprets the exception. Then, we consider whether Sheriff Chapman's dismissal of McCaffrey for supporting his political rival fell within the exception. Last, we address McCaffrey's specific challenges to the district court's findings regarding the exception.
 

 1.
 

 The
 
 Elrod
 

 -
 

 Branti
 
 exception to the First Amendment's protection against political affiliation dismissals was created from two Supreme Court cases. In
 
 Elrod
 
 , a plurality of the Supreme Court established the general rule that dismissing public employees for political affiliation violates their First and Fourteenth Amendment rights by limiting their political belief and association. However, the Supreme Court simultaneously carved out a narrow exception to this general rule prohibiting patronage dismissals. A government official does not violate a public employee's First Amendment rights when the employee is dismissed for political association if the employee holds a policymaking position.
 
 Elrod
 
 ,
 
 427 U.S. at 367
 
 ,
 
 96 S.Ct. 2673
 
 . In creating this exception, the Supreme
 Court recognized the dangers of the government's interests being "undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate."
 
 Id
 
 .
 

 In
 
 Branti
 
 , the Supreme Court clarified the exception announced in
 
 Elrod
 
 . The Court explained that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."
 
 Branti
 
 ,
 
 445 U.S. at 518
 
 ,
 
 100 S.Ct. 1287
 
 . The Court reasoned that "if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency."
 
 Id
 
 . at 517,
 
 100 S.Ct. 1287
 
 .
 

 Interpreting
 
 Elrod
 
 and
 
 Branti
 
 , this Court established a two-step inquiry for determining when party affiliation is an appropriate job requirement.
 
 Stott v. Haworth
 
 ,
 
 916 F.2d 134
 
 (4th Cir. 1990). First, a court must examine whether the position at issue relates to partisan political interests.
 
 Id
 
 . at 141. If the "first inquiry is satisfied, the next step is to examine the particular responsibilities of the position to determine whether it resembles ... [an] office holder whose function is such that party affiliation is an equally appropriate requirement."
 
 Id
 
 . at 142 (citing
 
 Jimenez Fuentes v. Torres Gaztambide
 
 ,
 
 807 F.2d 236
 
 , 241-42 (1st Cir. 1986) ).
 

 On several occasions, this Court has applied the
 
 Elrod
 

 -
 

 Branti
 
 exception in the context of a sheriff dismissing a deputy for supporting the sheriff's opponent. Most notably, in
 
 Jenkins v. Medford
 
 ,
 
 119 F.3d 1156
 
 , 1164 (4th Cir. 1997), this Court, sitting en banc, held that under the
 
 Elrod
 

 -
 

 Branti
 
 exception a North Carolina sheriff could terminate his deputy sheriffs for political affiliation. In determining that political affiliation was an appropriate job requirement, this Court first recognized that the electorate generally chooses a candidate based on policies and goals espoused by that candidate.
 
 Id
 
 . at 1162. Thus, a sheriff owes a duty to the electorate to ensure that those policies are implemented.
 
 Id
 
 .
 

 This Court also found that deputy sheriffs play a special role in implementing the sheriff's policies and goals.
 
 Id
 
 . Deputy sheriffs on patrol exercise significant discretion and make decisions that create policy.
 
 Id
 
 . The sheriff relies on his deputies "to foster public confidence in law enforcement" and "to provide the sheriff with the truthful and accurate information he needs to do his job."
 
 Id
 
 .
 

 Next, this Court examined the specific roles of sheriffs and deputies under North Carolina law.
 
 Id
 
 . at 1163. The North Carolina legislature has declared that the offices of sheriff and deputy sheriff are of special concern and prescribed a mandatory procedure for filling a sheriff vacancy.
 
 Id
 
 . Under North Carolina law, the sheriff may not delegate his duties but is able to appoint deputies to assist him.
 
 Id
 
 . For those appointed deputies, the sheriff is liable for their misbehavior.
 
 Id
 
 . Because a sheriff is liable for his deputies' actions, the legislature created deputies as at-will employees "who 'shall serve at the pleasure of the appointing officer.' "
 
 Id
 
 . at 1164 (quoting N.C. Gen. Stat. § 153A-103(2) (1996) ).
 

 After examining the role of deputy sheriffs, this Court determined that a deputy sheriff could appropriately be terminated for political affiliation under the
 
 Elrod
 

 -
 

 Branti
 
 exception.
 

 We hold that newly elected or re-elected sheriffs may dismiss deputies either because of party affiliation or campaign activity. Either basis serves as a proxy for loyalty to the sheriff.
 

 We can think of no clearer way for a deputy to demonstrate opposition to a candidate for sheriff, and thus actual or potential disloyalty once the candidate takes office, than to actively campaign for the candidate's opponent. ... "It was never contemplated that ... sheriffs ... must perform the powers and duties vested in them through deputies or assistants selected by someone else," and we do not believe it was ever contemplated that a sheriff must implement his policies and perform his duties through deputies who have expressed clear opposition to him.
 

 Id
 
 . at 1164-65 (footnotes omitted).
 

 This Court then explained that our holding was not based simply on a deputy sheriff's title. Instead courts look to the actual duties of the position of deputy sheriff. Specifically, we held:
 

 We limit dismissals based on today's holding to those deputies actually sworn to engage in law enforcement activities on behalf of the sheriff. We issue this limitation to caution sheriffs that courts examine the job duties of the position, and not merely the title, of those dismissed. Because the deputies in the instant case were law enforcement officers, they are not protected by this limitation.
 

 Id
 
 . at 1165 (footnotes omitted).
 
 [4]
 

 Subsequently, in
 
 Bland v. Roberts
 
 ,
 
 730 F.3d 368
 
 (4th Cir. 2013), this Court applied
 
 Jenkins
 
 and held that the exception did not apply when a deputy sheriff merely holds the title of deputy without engaging in law enforcement activities. In
 
 Bland
 
 , three of the plaintiffs were uniformed jailers with the title of deputy sheriff.
 
 Id
 
 . at 377. They were terminated for supporting the sheriff's electoral opponent.
 
 Id
 
 . at 371. This Court held that the
 
 Elrod
 

 -
 

 Branti
 
 exception to the First Amendment did not apply to them because the deputies in
 
 Bland
 
 had very different duties from the deputies in
 
 Jenkins
 
 . In
 
 Bland
 
 , the jailers' authority was more circumscribed, and their training was more concentrated on matters of custodial care and supervision than the deputy sheriffs in
 
 Jenkins
 
 . Additionally, the jailers in
 
 Bland
 
 did not have arrest power, did not take the core law enforcement course and were not out in the county engaging in law enforcement activities on behalf of the sheriff.
 
 Id
 
 . at 379.
 
 [5]
 

 Likewise, in
 
 Knight v. Vernon
 
 , this Court held that political allegiance to an employer was not an appropriate job requirement for a low-level jailer position.
 
 214 F.3d 544
 
 (4th Cir. 2000). This Court found that a jailer's duties were "essentially custodial."
 
 Id
 
 . at 551. As a result, this Court held that the
 
 Elrod
 

 -
 

 Branti
 
 exception did not apply.
 

 Our precedent, when considered together, provides the framework for our
 
 Elrod
 

 -
 

 Branti
 
 analysis. We first look to the electorate's approval of the policies on which the sheriff ran and the duties and responsibilities of the deputy sheriff in implementing those policies and priorities. We then examine the law of Virginia concerning the relationship between sheriffs and their deputies.
 

 2.
 

 Using this framework, we now turn to the facts of this case. Sheriff Chapman won an election for sheriff after espousing positions on how the LCSO should be run. As we have said before, "[e]lections mean something. Majorities bestow mandates."
 
 Borzilleri v. Mosby
 
 ,
 
 874 F.3d 187
 
 , 192 (4th Cir. 2017). Thus, Sheriff Chapman should be entitled, and indeed
 
 Jenkins
 
 provides that he has a duty, to carry out the policies the voters approved in the election.
 

 Next, the allegations in McCaffrey's complaint indicate his duties and responsibilities involved carrying out Sheriff's Chapman's policies and priorities. McCaffrey was a sworn deputy sheriff. He was a lead investigator of high-profile crimes including rape, robbery and homicide investigations. McCaffrey received the Loudoun County Investigator of the Month Award three times and was part of the "Team of the Month" three times. In 2015, McCaffrey was recognized for closing violent crime cases at a rate that significantly exceeded the national average. McCaffrey also received the Victim Services award from the Loudoun County Commonwealth Attorney's office. Like the deputy sheriffs in
 
 Jenkins
 
 and unlike the deputies in
 
 Bland
 
 and
 
 Knight
 
 , McCaffrey engaged in law enforcement functions on behalf of the sheriff. Under our precedent, a deputy sheriff with these duties and responsibilities falls within the
 
 Elrod
 

 -
 

 Branti
 
 exception.
 

 As this Court has made clear, a sworn deputy sheriff like McCaffrey had a special role in carrying out the law enforcement policies, goals and priorities on which Sheriff Chapman campaigned and prevailed.
 
 Jenkins,
 

 119 F.3d at 1162
 
 . Sheriff Chapman was entitled to carry out the policies on which he ran and won with deputy sheriffs who did not oppose his re-election. To repeat what this Court said in
 
 Jenkins
 
 , "we do not believe it was ever contemplated that a sheriff must attempt to implement his policies and perform his duties through deputies who have expressed clear opposition to him."
 
 Id
 
 . at 1165.
 

 McCaffrey's complaint illustrates the rationale behind the
 
 Elrod
 

 -
 

 Branti
 
 exception. An entire section of the complaint reads as a political attack ad against Sheriff Chapman. McCaffrey attacks Sheriff Chapman's character by accusing him of questionable fund raising, expenditures and hiring practices. McCaffrey alleges that Sheriff Chapman's treatment of employees was abusive and malicious and that Sheriff Chapman acted unprofessionally. McCaffrey also accuses Sheriff Chapman of mismanagement in the operations of the LCSO. Requiring a sheriff to employ deputies who have displayed the level of hostility portrayed in this complaint could reasonably impede a sheriff's obligation to his electorate to implement the platform on which he campaigned.
 

 This does not mean that law enforcement responsibilities are or should be handled in a political manner. That, of course, should never be the case. Instead, our decision is based on the reality, recognized in
 
 Jenkins
 
 , that sheriffs do and should carry out the policies, goals and priorities on which they ran.
 

 Id.
 

 at 1162
 
 . Sheriffs, by virtue of their executive roles, do not set policy in the same way as those performing legislative roles. But, in attempting to faithfully enforce the law, they must make policy-oriented decisions about the allocation of manpower and financial resources. A deputy sheriff necessarily carries out the sheriff's policies, goals and priorities which were approved by the electorate in a political election.
 
 Id
 
 . at 1162-63.
 

 Virginia law concerning the roles of sheriffs and their deputies confirms that deputies performing law enforcement functions have a policymaking role. Virginia's legislature passed laws specific to the role of the sheriff as a constitutional, elected officer.
 
 See
 
 Va. Code §§ 15.2-1609 - 15.2-1625 (1997). Virginia law prescribes a mandatory procedure for filling a vacancy in the sheriff's office.
 
 See
 
 Va. Code § 15.2-1600. Virginia law also specifies that sheriffs may appoint deputies to "discharge any of the official duties of their principal during his continuance in office...." Va. Code § 15.2-1603. It further mandates that deputies "before entering upon the duties of his office, shall take and prescribe the oath. ..."
 
 Id
 
 . Virginia law also provides that "any such deputy may be removed from office by his principal."
 
 Id
 
 . Additionally, a sheriff in Virginia is civilly and criminally liable for the acts of his deputy.
 
 See
 

 Whited v. Fields
 
 ,
 
 581 F.Supp. 1444
 
 , 1455 (W.D. Va. 1984) (finding that "not only is the sheriff liable civilly for the acts of his deputy in Virginia, but he also is liable criminally and can be fined for the conduct of his deputy"). Similar to North Carolina law discussed in
 
 Jenkins
 
 , the law of Virginia supports the conclusion that a sworn deputy sheriff is the type of employee to whom the
 
 Elrod
 

 -
 

 Branti
 
 exception applies.
 
 [6]
 

 3.
 

 Before concluding our
 
 Elrod
 

 -
 

 Branti
 
 analysis, we address McCaffrey's argument that the complaint, at a minimum, states a plausible claim for relief. Specifically, McCaffrey alleges in the complaint that he was not a policymaker for the LCSO, was not a spokesman for the LCSO, and did not represent the sheriff or speak on his behalf. McCaffrey further alleges that he was far down the chain of command under Sheriff Chapman's para-military structure that governed the LCSO's 600 deputy sheriff force.
 

 Since we are reviewing an order granting a Rule 12(b)(6) motion, we accept these allegations as true. However, these allegations do not save the complaint. In determining whether the deputy sheriff's duties and responsibilities fall within the
 
 Elrod
 

 -
 

 Branti
 
 exception,
 
 Jenkins
 
 instructs that
 we look to whether McCaffrey was a deputy sheriff "actually sworn to engage in law enforcement activities on behalf of the sheriff."
 
 Jenkins
 
 ,
 
 119 F.3d at 1166
 
 . Here, the allegations of the complaint leave no doubt that he was a deputy sheriff engaged in law enforcement activities and was not performing "custodial" duties like the deputies in
 
 Bland
 
 and
 
 Knight
 
 . Therefore, even accepting the allegations to which McCaffrey points as true, the
 
 Elrod
 

 -
 

 Branti
 
 exception applies to McCaffrey and the allegations of the complaint do not assert a plausible claim.
 

 McCaffrey also argues that his allegations about Sheriff Chapman's post-termination downward adjustment of McCaffrey's evaluation scores and interference with McCaffrey's efforts to obtain other employment removes this case from our precedent. However, those allegations are not material to the
 
 Elrod
 

 -
 

 Branti
 
 analysis. Such conduct might support a state law claim such as interference with prospective contractual relationship or other similar theories. But we must look to the nature of the deputy sheriff's duties, not the way in which he was terminated. Therefore, the post-termination allegations are of no import here. Even accepting these post-termination allegations as true, we find that the
 
 Elrod
 

 -
 

 Branti
 
 exception applies and McCaffrey has failed to state a claim that his First Amendment rights were violated.
 
 [7]
 

 D.
 

 Last, we turn to the
 
 Pickering
 

 -
 

 Connick
 
 doctrine. McCaffrey argues that his complaint states a claim of unconstitutional retaliation in response to McCaffrey's exercise of his free speech rights under
 
 Pickering
 

 -
 

 Connick
 
 . McCaffrey asserts that the district court erred by not addressing this issue and by dismissing the lawsuit. However, even when applied, the
 
 Pickering
 

 -
 

 Connick
 
 doctrine does not create a plausible claim for which relief can be granted.
 

 The Supreme Court in
 
 Pickering
 
 recognized that a cause of action exists for government employees who suffered retaliation by an employer for the exercise of the right guaranteed by the First Amendment to speak as a citizen on a matter of public concern.
 
 Pickering
 
 ,
 
 391 U.S. at 574
 
 ,
 
 88 S.Ct. 1731
 
 .
 
 Pickering
 
 established a balancing test where the government's interest in the efficiency of the public service it performs is weighed against the community's interest in hearing the employees' informed opinions on important public issues.
 
 Borzilleri
 
 ,
 
 874 F.3d at
 
 193-194 (citing
 
 Pickering,
 

 391 U.S. at 568
 
 ,
 
 88 S.Ct. 1731
 
 ).
 

 There are two threshold issues that must be met to proceed to the balancing inquiry.
 

 Id.
 

 "First, we determine whether public employees' statements can 'be fairly characterized as constituting speech on a matter of public concern.' "
 
 Id
 
 . at 194 (citing
 
 Connick v. Myers
 
 ,
 
 461 U.S. 138
 
 , 146,
 
 103 S.Ct. 1684
 
 ,
 
 75 L.Ed.2d 708
 
 (1983) ). If so, then "we ask whether public employees were speaking 'pursuant to their official duties.' "
 
 Id
 
 . (citing
 
 Garcetti v. Ceballos
 
 ,
 
 547 U.S. 410
 
 , 421,
 
 126 S.Ct. 1951
 
 ,
 
 164 L.Ed.2d 689
 
 (2006) ). We must answer the first question in the affirmative and
 the second in the negative to proceed to the balancing of interests.
 
 Id
 
 .
 

 There is no dispute that the second threshold question can be answered in the negative. McCaffrey was not speaking pursuant to his official duties as a deputy sheriff. As for the first threshold question, there may be some question as to whether McCaffrey's actions in supporting Sheriff Chapman's opponent can be characterized as "speech on a matter of public concern."
 
 Connick
 
 ,
 
 461 U.S. at 146
 
 ,
 
 103 S.Ct. 1684
 
 . However, we decline to find that McCaffrey's actions were not such speech. Considering the action to be qualifying speech, the balancing inquiry nevertheless weighs in favor of Sheriff Chapman, and thus we need not determine whether McCaffery's actions were the type of speech protected in
 
 Pickering
 
 .
 

 As stated by this Court in
 
 Borzilleri
 
 , "[o]nce we have found that the
 
 Elrod
 

 -
 

 Branti
 
 policymaker exception applies, the
 
 Pickering
 
 balance generally tips in favor of the government because of its overriding interest in ensuring an elected official's ability to implement his policies through his subordinates."
 
 Id
 
 . at 194. This Court in
 
 Bland
 
 similarly found that "in cases in which the
 
 Elrod
 

 -
 

 Branti
 
 exception applies, and an employer therefore does not violate his employee's association rights by terminating him for political disloyalty, the employer also does not violate his employee's free speech rights by terminating him for
 
 speech
 
 displaying that political disloyalty."
 
 730 F.3d at 394
 
 . We see no reason to depart from that conclusion here. We find that Sheriff Chapman had an overriding interest in ensuring his ability to implement his policies through his deputies. Therefore, the
 
 Pickering
 

 -
 

 Connick
 
 does not save McCaffrey's lawsuit from dismissal.
 

 III.
 

 In conclusion, we hold that under the
 
 Elrod
 

 -
 

 Branti
 
 exception, Sheriff Chapman's decision not to re-appoint McCaffrey did not violate his First Amendment right to freedom of political association. We also hold that Sheriff Chapman's decision not to reappoint McCaffrey did not violate his First Amendment right to freedom of speech under the
 
 Pickering
 

 -
 

 Connick
 
 doctrine because the balancing test weighs in favor of Sheriff Chapman. For the reasons given, the district court's ruling dismissing the case is
 

 AFFIRMED.
 

 The history of the office of sheriff runs deep in the state of Virginia. According to the National Sheriffs' Association, the first sheriff in America was Captain William Stone who, in 1634, was appointed sheriff for the Shire of Northampton in the colony of Virginia. Sheriff Roger Scott,
 
 Roots: A Historical Perspective of the Office of Sheriff
 
 , National Sheriffs' Association , https://www.sheriffs.org/publications-resources/resources/office-of-sheriff (saved as ECF opinion attachment)
 
 .
 

 The facts described are taken from the complaint since we review the district court's order granting a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
 

 Since the district court found that Appellees did not infringe McCaffrey's First Amendment rights, it did not need to consider whether McCaffrey adequately pled municipal liability for his
 
 42 U.S.C. § 1983
 
 claims against the Board of Supervisors of Loudoun County, Virginia and Loudoun County, Virginia.
 

 McCaffrey also filed a partial motion for summary judgment claiming, as a matter of law, Appellees' conduct violated the First Amendment. The district court denied this motion upon granting Appellees' motion to dismiss.
 

 It is clear our good colleague disapproves of
 
 Jenkins.
 
 He says so directly in the first paragraph of his dissent and then attempts to explain away its plain language. However, in relying on
 
 Jenkins
 
 , we are merely following the precedent of this Court, as we must.
 

 Bland
 
 clarifies that
 
 Jenkins
 
 was not "cabined" to North Carolina sheriffs and deputy sheriffs as the dissent suggests.
 
 Bland
 
 applied
 
 Jenkins
 
 to deputy sheriffs in Virginia, like we have in this case. Although
 
 Bland
 
 concluded the
 
 Elrod
 

 -
 

 Branti
 
 exception did not apply in that case, its conclusion was based on the duties of those deputy sheriffs. In
 
 Bland
 
 , the deputy sheriffs' duties were those of uniformed jailers rather than sworn law enforcement officers.
 
 Bland
 
 's conclusion was not based on any differences in the law of North Carolina and Virginia concerning sheriffs and deputy sheriffs. If
 
 Jenkins
 
 was "cabined" as the dissent suggests,
 
 Bland
 
 would have so indicated and decided the case accordingly. Instead,
 
 Bland
 
 noted that the dispositive issue in
 
 Jenkins
 
 was "the deputies' role as sworn law enforcement officers" and that
 
 Jenkins
 
 indicated its "result might have been different had the deputies' duties consisted of working as dispatchers."
 
 Bland
 
 ,
 
 730 F.3d at 377
 
 . McCaffrey's duties were those of a sworn law enforcement officer, not duties like those of a dispatcher. Accordingly,
 
 Bland
 
 supports, not conflicts, with our conclusion.
 

 The dissent emphasizes that
 
 Jenkins
 
 hinged on this Court's finding that in North Carolina, deputy sheriffs are alter egos of sheriffs. The comparison of North Carolina and Virginia law herein illustrates the laws of the two states on this point are substantially similar. However, Virginia case law is even more clear. In Virginia, "the relationship between the sheriff and his deputy is such that he is not simply the 'alter ego' of the sheriff, but he is one and the same as the sheriff."
 
 Whited
 
 ,
 
 581 F.Supp. at
 
 1454 (citing
 
 Mosby's Adm'r v. Mosby's Adm'r
 
 ,
 
 50 Va. (9 Gratt.) 584
 
 , 602-05 (1853) ).
 
 See also
 

 Bd. of Sup'rs of Rockingham Cty. v. Lucas
 
 ,
 
 142 Va. 84
 
 ,
 
 128 S.E. 574
 
 , 576 (1925) (finding that "[i]n contemplation of [Virginia] law, both organic and statutory, a sheriff and a deputy sheriff are one."). Thus, to the extent it is necessary for a deputy sheriff to be the alter ego of the sheriff to fall within
 
 Jenkins
 
 , that is clearly the case under Virginia law.
 

 While we must faithfully apply the appropriate standard for considering a Rule 12(b)(6) motion, this Court has previously decided
 
 Elrod
 

 -
 

 Branti
 
 decisions at the pleading stage. For example, in
 
 Jenkins,
 
 this Court reversed the district court's denial of the sheriff's motion to dismiss and remanded the case to the district court to enter an order of dismissal.
 
 Jenkins,
 

 119 F.3d at 1165
 
 . Further, in
 
 Borzilleri
 
 , we recently reviewed a district judge's grant of a motion to dismiss and found that the
 
 Elrod
 

 -
 

 Branti
 
 exception applied.
 
 874 F.3d at 189
 
 .