**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1928**

---

ARTHUR M. LOVE,

        Plaintiff - Appellant,

    v.

LARRY HOGAN; BOYD RUTHERFORD; STEVEN MCADAMS; ALLISON
MAYER; MONA VAIDYA; SHAREESE CHURCHILL; MATTHEW A.
CLARK; THE STATE OF MARYLAND,

        Defendants - Appellees.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Julie R. Rubin, District Judge.  (1:21-cv-02029-JRR)

---

Submitted:  October 7, 2024                      Decided:  March 11, 2025

---

Before HARRIS and RUSHING, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed as modified in part, vacated and remanded in part by unpublished per curiam
opinion.

---

Arthur Love, Appellant Pro Se. James Nelson Lewis, OFFICE OF THE ATTORNEY
GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Arthur Love appeals the district court's order granting Defendants' motion to dismiss Love's complaint, which alleged First Amendment retaliation, violation of the state constitutional right to free speech, and wrongful discharge. Love sued the State of Maryland and seven state officials, in their official and individual capacities, under 42 U.S.C. §§ 1983, 1985, and 1986. We affirm as modified the dismissal of most of the claims. However, as to the § 1983 claim against Appellant Steven McAdams, we vacate the dismissal and remand that claim for further proceedings.

The district court dismissed the federal claims against the State of Maryland and the official capacity Defendants as barred by sovereign immunity. "State sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it." *Biggs v. N.C. Dep't Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (cleaned up); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). Sovereign immunity extends to state officials acting in their official capacity. *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014). Congress has not abrogated sovereign immunity for § 1983, § 1985, or §1986 suits. *Biggs*, 953 F.3d at 241 (§ 1983); *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) (§§ 1983, 1985); *Fincher v. Fla. Dep't of Labor*, 798 F.2d 1371, 1372 (11th Cir. 1986) (§ 1985). Moreover, Maryland has not waived its sovereign immunity for federal statutory

2

claims.  *See Williams v. Morgan State Univ.*, 300 A.3d 54, 65-66 (Md. 2023); *Estate v. Leysath*, 2018 WL 1225087, *4 (D. Md. Mar. 6, 2018) (noting that Maryland Tort Claims Act ("MTCA")[1] does not waive sovereign immunity for § 1983 suits).  In addition, claims for damages brought under §§ 1983, 1985 and 1986 can only be brought against "persons" acting under color of state law, and neither states nor state officials acting in their official capacities are considered "persons" under § 1983.  *Hafer v. Melo*, 502 U.S. 21, 26 (1991).  Accordingly, we find that the district court properly dismissed the federal civil rights claims brought against Maryland and all Defendants in their official capacities.

Turning to the state constitutional claim for free speech retaliation[2] and the state and federal wrongful discharge claims brought against the State and the Defendants in their official capacities, Maryland, pursuant to the MTCA, waived its sovereign immunity for certain tort actions brought in state court alleging injury caused by the tortious conduct of the State or state employees.  *Proctor v. WMATA*, 990 A.2d 1048, 1059 (Md. 2010) (noting that the MTCA should be broadly construed to ensure injured parties have a remedy).  The MTCA provides that "the immunity of the State and of its units is waived as to a tort action, in a court of the State."  Md. Code Ann., State Gov't § 12-104(a) (LexisNexis 2023).  However, this waiver of sovereign immunity does not extend to claims filed in federal

---

[1] Md. Code Ann., State Gov't §§ 12-101 to -110 (LexisNexis 2023).

[2] *See* Article 40 of the Maryland Declaration of Rights.  Maryland courts "interpret the protections of Article 40 as generally co-extensive with the protections of the First Amendment."  *Newell v. Runnels*, 967 A.2d 729, 743 n.11 (Md. 2009) (internal quotation marks omitted).

3

court. *Proctor*, 990 A.2d at 1067-68 & n.5 (holding that Maryland, in enacting MTCA, intended to retain State's Eleventh Amendment immunity from suit in federal court). Accordingly, the district court properly dismissed the state constitutional claims and the wrongful discharge claims against Maryland and the Defendants in their official capacities.

Turning to the claims against the state employees in their personal capacities, the district court found that the complaint failed to allege that Defendants acted outside the scope of their official capacities and concluded that the complaint had not brought claims against Defendants in their individual capacities.  However, Love's complaint clearly sued all the individual Defendants in both their individual and official capacities.  Moreover, the complaint sought compensatory and punitive damages (not available in official capacity suits) and Defendants' motion to dismiss raised a qualified immunity defense, indicating that Defendants interpreted the action to be against them in their personal capacities.  *See Biggs v. Meadows*, 66 F.3d 56, 60-61 (4th Cir. 1995).  As such, the district court erred in failing to recognize that the Defendants were also sued in their personal capacities.

Nonetheless, we find that the claims against most of the Defendants, in their personal capacities, were properly dismissed for failure to state a claim.  We review de novo a district court's order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "accept[ing] the factual allegations of the complaint as true and constru[ing] them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

4

In other words, "a plaintiff must provide sufficient detail to show that he has a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners*, L.P., 887 F.3d 637, 645 (4th Cir. 2018) (cleaned up), *vacated on other grounds*, 140 S. Ct. 2736 (2020).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

The claims against McAdams require further discussion and are analyzed in more detail below.  Regarding the remaining Defendants, as the district court noted, beyond describing each Defendants' title, Love did not plead specific, individualized allegations against any Defendant.  Instead, he used "Defendants" throughout his complaint.  Accordingly, we affirm the dismissal of Love's claims as to all Defendants in their individual capacities, except for McAdams.  *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023) (affirming dismissal where "complaint [made] only collective allegations against all 'Defendants,' without identifying how each individual Defendant personally interacted with [plaintiff] or was responsible for the denial of his Eighth Amendment rights.").

Turning to McAdams, Love alleged as follows.  In 2015, Maryland Governor Larry Hogan appointed Love to be Deputy Director of Community Initiatives.  However, in 2020,

Love was terminated from his position after he made social media posts in a private online chat room. The social media posts in question were in a private Facebook group called "Inside Maryland Politics" and commented on the civil unrest occurring in Kenosha, Wisconsin, following the police shooting of Jacob Blake on August 23, 2020. Specifically, on August 28, 2020, Love used his private Facebook account to discuss Kyle Rittenhouse's case and support Rittenhouse's self-defense right, asserting that Rittenhouse's actions may have been justified under the doctrine of self-defense. Love alleged that he made the posts in his personal time, using his private personal Facebook account, and that he did not explicitly or implicitly make such statements in an official capacity as a Maryland government employee.

The next morning, press had gathered outside Love's house, and Love called McAdams, the Executive Director of the Governor's Office. McAdams assured Love that there was nothing to worry about. However, on August 30, Love received a phone call from McAdams informing him that he had been terminated due to his Facebook posts. McAdams sent Love a termination letter the next day and publicly stated that Love's termination was due to his divisive social media posts.

Beginning with Love's § 1983 First Amendment individual capacity claim against McAdams, sovereign immunity does not bar suits against state officials in their individual capacities under § 1983. *Hafer*, 502 U.S. at 30-31. Indeed, "[t]he First Amendment[] . . . generally prohibits dismissals of employees in retaliation for the exercise of protected speech." *McCaffrey v. Chapman*, 921 F.3d 159, 164 (4th Cir. 2019). "However, under the

6

*Pickering-Connick* doctrine,[3] the First Amendment does not protect public employees from termination when their free speech interests are outweighed by the government's interest in providing efficient and effective services to the public." *Id.*

The district court explicitly declined to consider whether Love's termination was constitutional as a matter of law under *Pickering-Connick*, relying instead on dismissal on sovereign immunity grounds. However, as noted above, sovereign immunity does not preclude Love's § 1983 claim against McAdams in his individual capacity. Accordingly, the court's dismissal of this claim was erroneous. We decline to decide in the first instance whether McAdams has stated a claim in this regard, and thus, we vacate the dismissal of this claim and remand for further proceedings.

Regarding Love's Article 40 state law and wrongful discharge state law claims against McAdams in his individual capacity, "[s]tate personnel . . . are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under [the MTCA]." Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (LexisNexis 2023); *see* Md. Code Ann., State Gov't § 12-105 (LexisNexis 2023) ("State personnel shall have the immunity from liability described under § 5-522(b)."). Thus, despite the immunity afforded by the MTCA, with

---

[3] The test is derived from *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Education*, 391 U.S. 563 (1968).

7

regard to state law claims, defendants are liable in their individual capacities for malicious or grossly negligent torts. *See Nero v. Mosby*, 890 F.3d 106, 124 (4th Cir. 2018).

Love asserts on appeal that he adequately pled malice and/or gross negligence sufficient to avoid McAdams' MTCA immunity. "Actual malice, in Maryland law, normally refers to conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) (cleaned up). For MTCA purposes, malice requires an act without justification or excuse "but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Nero*, 890 F.3d at 127.

Here, Love alleged that McAdams suggested to him that his employment was secure despite his social media posts, and then Love was fired because his social media posts were divisive and contrary to the mission of his employing office. While Love conclusorily asserts that his firing was "malicious," Love presents no facts from which to conclude that McAdams' contradictory actions were conducted out of "hate" or to "deliberately and willfully injure" Love. The "about face" alone, even considered in the light most favorable to Love, is insufficient to rise to the level of malice.

Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," *Cooper v. Rodriguez*, 118 A.3d 829, 845 (Md. 2015) (citation omitted), "something more than simple negligence, and likely more akin to reckless conduct," *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (internal quotation marks omitted). A government official commits gross negligence "only when he or she inflicts injury intentionally or is so utterly indifferent to

8

the rights of others that he or she acts as if such rights did not exist." *Cooper*, 118 A.3d at 846 (brackets and citation omitted). Thus, to avoid McAdams' MTCA-immunity defense on the basis of gross negligence, Love must point to specific facts that raise an inference that McAdams' actions were improperly motivated. *See Nero*, 890 F.3d at 128 (noting that conclusory allegations of gross negligence are insufficient to avoid the MTCA).

Again, Love's allegations regarding McAdams are conclusory. Love makes no allegations and provides no facts from which McAdams' state of mind could be inferred. Nor does he provide any facts supporting a conclusion that McAdams' termination of Love was improperly motivated or that, when it happened, McAdams knew the firing was in violation of Love's state constitutional rights.

In *Boyer v. Maryland*, 594 A.2d 121, 132 (Md. 1991), the Maryland court determined that Boyer's allegations that an officer pursued a drunk driving suspect at an "excessively high" speed through heavy traffic and wrongfully failed to activate emergency equipment was insufficient to properly allege gross negligence as it was "vague" and failed to allege a "wanton and reckless disregard." Love's allegations are even more conclusory than the allegations in *Boyer* which clearly averred violation of police policies. As discussed above, violation of the First Amendment or the parallel state protections requires a balancing of interests in a case like this, so an inference that McAdams' actions were improperly motivated would require a showing that the result of a balancing of interests was both clearly in Love's favor and understood that way by McAdams. Love does not include any allegations regarding the interests of the Governor's office, the disruption or lack thereof caused by Love's posts, or McAdams' involvement in any upheaval or

9

controversy concerning Love's posts.  As such, an inference of gross negligence would require rank speculation.  Accordingly, Love has failed to allege a cause of action that avoids McAdams' MTCA immunity.

Next, we consider Love's remaining federal statutory claims against McAdams. The elements of a 42 U.S.C. § 1985(3) claim are:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Strickland v. United States*, 32 F.4th 311, 360 (4th Cir. 2022).  "[This court has] specifically rejected [§]1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."  *Id.* at 361.  And, under § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  "Section 1986, in turn, provides a cause of action against anyone who has knowledge of a § 1985 conspiracy and who, 'having the power to prevent or aid in preventing the commission of' acts pursuant to that conspiracy, 'neglects or refuses so to do.'"  *Strickland*, 32 F.4th at 360 (quoting 42 U.S.C. § 1986).  "Section 1986 claims are therefore derivative of § 1985 violations."  *Id.*

Love asserts on appeal that he adequately pled a § 1985 claim because McAdams told Love that his position was safe and then he was subsequently fired, inferring that Defendants must have met and discussed their plan of action.  He also argues that he pled class-based discrimination because he alleged that Defendants engaged in unconstitutional

10

viewpoint discrimination.  However, Love's complaint did not allege any facts beyond repeating the elements of a § 1985(3) claim.  His assertion that Defendants must have met and discussed his termination—because McAdams advised him that his job was secure, but he was subsequently fired—is speculation.  Love did not allege any concrete facts showing a conspiracy between McAdams and anyone else, as he failed to plead particularized facts against any other Defendant.  He also did not claim Defendants conspired to terminate him because of racial animus.  Rather, he asserted that "viewpoint discrimination" constituted class-based animus.  *But see Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir. 1985) (noting that, under § 1985(3), "the class protected can extend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, 'in unprotected circumstances similar to those of the victims of Klan violence.'" (quoting *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 851 (1983))).  Even if class-based discrimination included viewpoint discrimination, Love failed to sufficiently allege the other elements of a § 1985 claim.  And, as a claim under § 1986 is derivative of a § 1985 violation, dismissal of Love's § 1986 claim was also proper.  Accordingly, the district court correctly dismissed these claims.

As such, we modify the district court's dismissal of Love's claims against the State of Maryland and the Defendants, in their official capacities, to reflect that the dismissals are without prejudice and affirm the dismissals as modified.[4]  We affirm the district court's

---

[4] While the dismissal of the official capacity claims against all Defendants and the dismissal of the State of Maryland were proper for the reasons discussed above, because the claims were dismissed for lack of jurisdiction (sovereign immunity), the dismissals are (Continued)

dismissal of the claims against all Defendants in their individual capacities except McAdams.  With regard to McAdams, we affirm the dismissal of all claims against him except for Love's § 1983 claim.  With regard to that claim alone, we vacate and remand for further proceedings.  We grant Love's motion for an extension of time to file his reply brief and consider the brief timely filed.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED AS MODIFIED IN PART;*
*VACATED AND REMANDED IN PART*

---

modified to reflect dismissals without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands*, LLC, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of . . . subject matter jurisdiction . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

12