**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLES K. STEWART,
           *Plaintiff-Appellee,*

v.

STATE OF NORTH CAROLINA; NORTH
CAROLINA DEPARTMENT OF
CORRECTION; THEODIS BECK,
Secretary of North Carolina
Department of Correction; LAVEE
HAMER, General Counsel, North
Carolina Department of Correction;
DANIEL L. STIENEKE, Chief Deputy          No. 04-1138
Secretary, North Carolina
Department of Correction; JAMES
BOYD BENNETT, Director of Prisons,
North Carolina Department of
Correction; GEORGE T. SOLOMON;
GRAHAM PICKETT,
           *Defendants-Appellants,*

and

JOHN DOE, #1; JANE DOE, #2,
           *Defendants.*

CHARLES K. STEWART,
          *Plaintiff-Appellee,*

v.

STATE OF NORTH CAROLINA; NORTH
CAROLINA DEPARTMENT OF
CORRECTION; THEODIS BECK,
Secretary of North Carolina
Department of Correction; LAVEE
HAMER, General Counsel, North
Carolina Department of Correction;
DANIEL L. STIENEKE, Chief Deputy          No. 04-1166
Secretary, North Carolina
Department of Correction; JAMES
BOYD BENNETT, Director of Prisons,
North Carolina Department of
Correction; GEORGE T. SOLOMON;
GRAHAM PICKETT,
          *Defendants-Appellants,*

          and

JOHN DOE, #1; JANE DOE, #2,
          *Defendants.*

Appeals from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, District Judge.
(CA-03-55-4)

Argued: September 28, 2004

Decided: January 3, 2005

Before WILKINS, Chief Judge, and LUTTIG and
GREGORY, Circuit Judges.

Reversed in part, affirmed in part, and remanded by published opinion. Chief Judge Wilkins wrote the opinion, in which Judge Luttig and Judge Gregory joined.

## COUNSEL

**ARGUED:** Thomas Henry Moore, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Anthony M. Brannon, BRANNON STRICKLAND, P.L.L.C., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Roy Cooper, Attorney General of North Carolina, Thomas J. Pitman, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Eugene G. Boyce, BOYCE & ISLEY, Raleigh, North Carolina, for Appellee.

## OPINION

WILKINS, Chief Judge:

The North Carolina Department of Correction (NCDOC), NCDOC officials (the officials), and the State of North Carolina (the State) (collectively, "Appellants") appeal a district court decision denying their motion to dismiss on the ground of sovereign immunity. For the reasons stated below, we reverse in part, affirm in part, and remand.

I.

During spring 2002, NCDOC investigated potential misconduct by Appellee Charles Stewart, who was then chief of security of NCDOC. The investigation culminated in a report implicating Stewart in a double-billing scheme. The report was leaked to the *Raleigh News & Observer*, allegedly by NCDOC officials. The *News & Observer* ran an article on July 17, 2002, detailing the findings of the report. Although a follow-up investigation exonerated Stewart, he was nonetheless reassigned by NCDOC from Raleigh to Smithfield, North Carolina, a move Stewart alleged to be a demotion.

Stewart filed an action in North Carolina state court against Appellants in their official and individual capacities, seeking money damages for violations of both federal and state law. Specifically, Stewart alleged federal claims under 42 U.S.C.A. § 1983 (West 2003) and state law claims for defamation, tortious interference with contract, civil conspiracy, intentional infliction of emotional distress, tortious invasion of privacy, gross negligence, and for violations of the North Carolina Whistleblower Act, *see* N.C. Gen. Stat. § 126-85 (2003), and the North Carolina Constitution.

Appellants removed the case to federal court and moved to dismiss all of Stewart's claims. The district court granted the motion to dismiss with respect to the § 1983 claims, the tortious invasion of privacy claims, the civil conspiracy claims against Appellants in their official capacities, and the state constitutional claims against the officials in their individual capacities. The district court denied the motion to dismiss as to the balance of the claims.

Appellants challenge the district court decision only with regard to the intentional tort and gross negligence claims, arguing that the district court erroneously relied on *Lapides v. Board of Regents*, 535 U.S. 613 (2002), in holding that Appellants waived sovereign immunity by voluntarily removing the case to federal court. The officials argue additionally that while the complaint purports to assert claims against them in their official and individual capacities, it is at bottom a complaint only against them in their official capacities. Thus, the officials maintain that they are entitled to dismissal of the claims against them in their individual capacities.[1]

II.

The first issue presented is whether a state waives its sovereign immunity by voluntarily removing an action to federal court when it would have been immune from the same action in state court. This is

---

[1]Appellants invoked sovereign immunity as a defense to both the official capacity and individual capacity claims. We therefore have jurisdiction over this interlocutory appeal by virtue of the collateral order doctrine. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993).

an issue of first impression in the federal circuits. Because it is a legal question, our review is de novo. *See Wessel v. Glendening*, 306 F.3d 203, 207 (4th Cir. 2002).

A.

We find it useful at the outset to distinguish the related but not identical concepts of Eleventh Amendment immunity and state sovereign immunity. This distinction has generated confusion in the past:

> We have . . . sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

*Alden v. Maine*, 527 U.S. 706, 713 (1999).

State sovereign immunity is "based on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." *Nevada v. Hall*, 440 U.S. 410, 416 (1979) (internal quotation marks omitted). In that sense, state sovereign immunity was not created by the Eleventh Amendment, but rather predated it. *See Alden*, 527 U.S. at 728-29 ("The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle."); *Hans v. Louisiana*, 134 U.S. 1, 16 (1890) ("The suability of a state, without its consent, was a thing unknown to the law."). In contrast, by the terms of the Eleventh Amendment, an unconsenting state is immune from suit filed in federal court by a citizen of another state. *See* U.S. Const. amend. XI. The purpose of the Eleventh Amendment was to overrule *Chisholm*

*v. Georgia*, 2 U.S. (2 Dall.) 419 (1793), not to define the contours of state sovereign immunity generally. *See Alden*, 527 U.S. at 723 ("[T]he Eleventh Amendment did not redefine the federal judicial power but instead overruled the Court."). Thus, Eleventh Amendment immunity is but an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states by citizens of other states. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997) (discussing "the broader concept of immunity, implicit in the Constitution, which we have regarded the Eleventh Amendment as evidencing and exemplifying").

B.

The district court relied exclusively on *Lapides* for the conclusion that "[b]y removing this case to federal court, the defendants voluntarily invoke[d] federal court jurisdiction and are thereby deemed to have waived immunity." J.A. 87. We believe the district court read the rule of *Lapides* too broadly. *Lapides* addresses whether a state that removes an action to federal court having already consented to suit in its own courts can invoke Eleventh Amendment immunity; it does not resolve whether a state that has not consented to suit in its own courts maintains either the broader concept of sovereign immunity or Eleventh Amendment immunity upon voluntarily removing a case to federal court.

Paul Lapides filed an action in state court against the State of Georgia, alleging claims in respect to which the state had *already consented* to suit in its own courts. *See Lapides*, 535 U.S. at 616. The state removed the case to federal court and sought dismissal on the basis of Eleventh Amendment immunity. *See id.* Because Georgia had already consented to suit in its own courts, the only issue was whether the state could *regain* immunity by removing the case to federal court and invoking the Eleventh Amendment. *See id.* at 617, 622. The Court soundly rejected that possibility, holding that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum." *Id.* at 624.

The district court failed to acknowledge the limited scope of *Lapides*. The Court in *Lapides* did not resolve the effect, if any, of a

state's voluntary decision to remove an action from which it would have been immune in its own courts. *See id.* at 617-18 (stating that the Court was not addressing "the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court").[2] To rely exclusively on *Lapides* for the conclusion that North Carolina waived its sovereign immunity by voluntarily removing an action from which it would have been immune in its own courts fails to take into account that *Lapides* dealt with the availability of the narrow immunity provided by the Eleventh Amendment upon removal of "state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings," *id.* at 617, not the portability of sovereign immunity more generally.

Nevertheless, the principles animating *Lapides* shed light on the issue we resolve today. As a basis for its holding, the *Lapides* Court first examined decisions in which waivers of Eleventh Amendment immunity were found to be effected by a state's voluntary entry into litigation. *See Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947) (holding that when a state files a claim in bankruptcy court "it waives any immunity which it otherwise might have had respecting the adjudication of the claim"); *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284-85, 289 (1906) (holding that state participation in tax collection litigation waived Eleventh Amendment immunity); *Clark v. Barnard*, 108 U.S. 436, 447 (1883) (holding Eleventh Amendment immunity waived "by the voluntary appearance of the state in intervening as a claimant of the fund in court"). These cases, the Court explained, stood for the general principle that "'where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.'" *Lapides*, 535 U.S. at 619 (quoting *Gunter*, 200 U.S. at 284).

---

[2]Indeed, other circuits that have interpreted *Lapides* in similar contexts have recognized its limited scope. *See, e.g., Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003); *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1204 (10th Cir. 2002); *Watters v. Wash. Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir. 2002); *cf. New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir. 2004).

Having established this general principle, the Court next acknowledged that unlike the state defendants in *Gardner*, *Gunter*, and *Clark*, Georgia "was brought involuntarily into the case as a defendant in the original state-court proceedings." *Id.* at 620. However, the Court noted, Georgia "then voluntarily agreed to remove the case to federal court. In doing so, it voluntarily invoked the federal court's jurisdiction." *Id.* (citations omitted). The Court was thus faced with determining whether Georgia's actions fell within the general rule of *Gardner*, *Gunter*, and *Clark*, even though Georgia's original entry into litigation had been involuntary. *See id.* ("[U]nless there is something special about removal or about this case, the general legal principle requiring waiver ought to apply."). The Court concluded that Georgia's decision to remove the action triggered the general rule that when a state voluntarily becomes a party to a cause, it cannot then invoke Eleventh Amendment immunity to avoid the litigation. *See id.*

The reasons given by the Court in reaching this conclusion serve to distinguish *Lapides* from the case at bar. The Court explained:

> [A]n interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of "immunity" to achieve litigation advantages.

*Id.*; *see id.* at 623 ("A rule of federal law that . . . denies waiver despite the state attorney general's state-authorized litigating decision, does the opposite."). Indeed, the focus throughout the Eleventh Amendment inquiry was on consistency, fairness, and preventing States from using the Amendment "to achieve unfair tactical advantages." *Id.* at 621. "And that being so," the Court explained, "the rationale for applying the general 'voluntary invocation' principle is as strong here, in the context of removal, as elsewhere." *Id.*

With respect to the risk of inconsistency and unfair tactical advantage, this case is very different from *Lapides*. Unlike Georgia in *Lapides*, North Carolina had not consented to suit in its own courts for the relevant claims asserted by Stewart. *See Collins v. N.C. Parole*

*Comm'n*, 473 S.E.2d 1, 3 (N.C. 1996) (gross negligence);[3] *Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill*, 567 S.E.2d 215, 218 (N.C. Ct. App. 2002) (intentional torts). Therefore, by removing the case to federal court and then invoking sovereign immunity, North Carolina did not seek to *regain* immunity that it had abandoned previously. Instead, North Carolina merely sought to have the sovereign immunity issue resolved by a federal court rather than a state court.

By permitting defendants to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C.A. § 1441(a) (West 1994), the removal statute makes available a federal forum in which defendants can assert substantive defenses, so long as one or more of the claims fall within the subject matter jurisdiction of the district courts.[4] Here, the district court possessed jurisdiction over Stewart's § 1983 claims, *see* 28 U.S.C.A. § 1331 (West 1993), and thus the entire case met the criteria for removal, *see* 28 U.S.C.A. § 1441(c) (West 1994). North Carolina chose to employ the removal device to have the issue of sovereign immunity resolved in a federal, rather than a state, forum. We see nothing inconsistent, anomalous, or unfair about permitting North Carolina to employ removal in the same manner as any other defendant facing federal claims. We therefore hold that North Carolina, having not already consented to suit in its own courts, did not waive sovereign immunity by voluntarily removing the action to federal court for resolution of the immunity question.[5]

---

[3]As to claims sounding in negligence, North Carolina has vested exclusive jurisdiction in the North Carolina Industrial Commission. *See* N.C. Gen. Stat. § 143-291(a) (2003).

[4]*See* Erwin Chemerinsky, *Federal Jurisdiction* § 5.5 (4th ed. 2003) ("The existence of removal jurisdiction reflects the belief that both the plaintiff and the defendant should have the opportunity to benefit from the availability of a federal forum.").

[5]To be precise, by "sovereign immunity" we are referring to the longstanding principle of state sovereign immunity implicit in constitutional order, not the more narrow principle of Eleventh Amendment immunity. *See supra* Part II.A. As the issue is not presented by this case, we express no opinion as to the effect, if any, of voluntary removal on the availability of Eleventh Amendment immunity where the State has not already consented to suit in its own courts.

For these reasons, we reverse the denial of the motion to dismiss the intentional tort and gross negligence claims against the State, NCDOC, and the officials in their official capacities.

## III.

The district court also denied the motion to dismiss the claims against the NCDOC officials in their individual capacities. The officials argue that although the caption of Stewart's complaint purports to name the officials in their individual and official capacities, the allegations of the complaint concern only official conduct. However, under North Carolina law "[t]he crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged." *Meyer v. Walls*, 489 S.E.2d 880, 887 (N.C. 1997) (internal quotation marks omitted). "A suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly; a suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent." *Id.* The body of Stewart's complaint reveals that he is seeking relief not only "from the entity of which the public servant defendant[s are] agent[s]," *id.*—here, NCDOC—but also "from the defendant[s] directly," *id.* At this early stage in the litigation, Stewart's allegations sufficiently assert claims against the officials in their individual capacities. Still to be resolved is whether the officials are immune from liability as public officials under North Carolina law. *See, e.g.*, *id.* at 888-89; *Epps v. Duke Univ., Inc.*, 468 S.E.2d 846, 851-52 (N.C. Ct. App. 1996). As the parties and the district court have yet to address this issue, we leave its resolution to the district court on remand.

## IV.

In sum, we reverse the district court decision as to the intentional tort and gross negligence claims against the State, NCDOC, and the officials in their official capacities. We affirm the district court decision as to the claims against the officials in their individual capacities, and we remand for further proceedings consistent with this opinion.

*REVERSED IN PART, AFFIRMED IN PART,*
*AND REMANDED*