**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2437**

RAY C. BIGGS,

Plaintiff − Appellant,

v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; ERIK A. HOOKS,
in his official capacity as Secretary for the North Carolina Department of Public
Safety,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at
Raleigh.  Terrence W. Boyle, Chief District Judge.  (5:17-cv-00120-BO)

Argued:  December 11, 2019                    Decided:  March 10, 2020

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

Motion to dismiss appeal denied.  Affirmed in part, vacated in part, and remanded by
published opinion.  Judge Diaz wrote the opinion, in which Judge Wilkinson and Judge
Keenan joined.

**ARGUED:**  John Heydt Philbeck, Sr., BAILEY & DIXON, Raleigh, North Carolina, for
Appellant.  Sripriya Narasimhan, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellees. **ON BRIEF:**  Joshua H. Stein, Attorney General,
Tamika L. Henderson, Special Deputy Attorney General, NORTH CAROLINA
DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

DIAZ, Circuit Judge:

Ray C. Biggs brought this 42 U.S.C. § 1983 suit against his employer, the North Carolina Department of Public Safety (the "Department"), and its Secretary, Erik A. Hooks (collectively, "Defendants"), arising from a demotion he suffered in 2012. Biggs, a black man, claims that Defendants racially discriminated against him by punishing him more harshly than white employees who broke the same rule that he did. He seeks reinstatement to his prior position, the removal of negative materials from his personnel file, and reimbursement for his legal expenses. The district court granted Defendants summary judgment on the basis that they retain sovereign immunity despite removing this case to federal court. Biggs now appeals. Defendants have moved to dismiss this appeal as moot because Biggs recently retired from the Department.

As an initial matter, we deny Defendants' motion to dismiss because Biggs has sworn that he would promptly return to work if reinstated to his prior position. We affirm the grant of summary judgment to the Department because its removal of this case didn't constitute a waiver of sovereign immunity. But we vacate the award of summary judgment for Hooks and remand for further proceedings because—contrary to what the district court found—Biggs is seeking prospective (not retrospective) relief, meaning his claim against Hooks falls under the sovereign-immunity exception articulated in *Ex Parte Young*, 209 U.S. 123 (1908).

## I.

## A.

Biggs has worked for the Department since 1991. In March 2012, he was promoted to the position of correctional captain, making him the officer-in-charge during his shifts at the Bertie Correctional Institute. He received very good performance reviews throughout his career and had never been disciplined.

On August 19, 2012, while Biggs was on duty, several inmates attacked three correctional officers. Biggs followed Department procedure by ordering a lockdown (requiring all inmates to return to their cells) and sending the injured officers to receive medical treatment.

Shortly thereafter, Shady Welch, a correctional officer, saw two inmates who had been involved in the fight walking unrestrained around the facility. Welch escorted them—without handcuffs, contrary to Department policy—to a holding cell in the intake area. The two inmates then asked to speak to Biggs, so Welch retrieved him.

The two inmates, who were still unrestrained, told Biggs that staff had assaulted them. While they spoke with Biggs, several prison guards approached the cell, yelling and gesturing hostilely toward them. According to Biggs, he believed at this point that there had been two assaults: one where other inmates attacked staff, and another where staff attacked the two inmates to whom he was speaking.

Department policy required Biggs to promptly investigate inmates' excessive-force claims. To that end, Biggs sought to transport the two inmates to an office so that they

3

could write statements about their excessive-force claim. Department policy also mandates that inmates must be handcuffed behind their back before being removed from a cell and while being escorted through the facility. The inmates refused Biggs's repeated requests to submit to being cuffed from the back, stating that they feared staff would attack them and wanted to be able to defend themselves. Biggs agreed to cuff them from the front instead and walked them across a five-foot-wide hallway and into an office, where they wrote statements. Later, one of these inmates was found to have a homemade razor blade in his pocket after going through a metal detector.

The Department investigated the fight and the staff's response to it. One of the investigators opined that Biggs's violation of the handcuffing policy sent the wrong message to other staff and created a risk that the inmates would harm staff or themselves. In her view, Biggs should have either refused to talk to the inmates until they consented to being handcuffed in the back or used force (like mace) to restrain and escort them.

B.

After receiving the investigators' report, two senior Department officials demoted Biggs six pay grades to line correctional officer, the position he started at in 1991. The officials reasoned that Biggs had put others in danger and, as the officer-in-charge, he had a responsibility to be a proper role model for his staff. A six-pay-grade demotion usually entails a thirty-percent pay cut, but the Department cut Biggs's salary by only ten percent due to his prior good record. Biggs filed an internal grievance, but the Department upheld the demotion and promoted a white staffer to replace him. Biggs then learned that white staffers had received lesser punishments for violating the handcuffing policy. For example,

4

Welch was not disciplined for escorting the same inmates without handcuffs, and two years earlier another correctional captain was merely issued a warning for directing staffers to open an inmate's cell door before restraining him.

Next, Biggs filed a petition with the North Carolina Office of Administrative Hearings ("OAH"), arguing that the Department lacked just cause to demote him. The OAH held a hearing at which Biggs, Welch, the investigator, the two senior officials who decided to demote him, and two other Department employees testified. Biggs didn't allege or present any evidence to the OAH that race was a factor in his demotion. The OAH found that Biggs had willfully violated the Department's handcuffing policies and affirmed Biggs's demotion, but the OAH said nothing about Biggs's race or whether it played a role in his demotion.

## C.

Biggs then filed this lawsuit in state court. He sought only injunctive relief, asking the court to compel Defendants to reinstate him to his prior position (with its accompanying benefits), remove negative materials from his personnel file, and reimburse him for his legal expenses. Defendants promptly removed the case to federal court and moved to dismiss it, contending that they had sovereign immunity and that the OAH's just-cause determination estopped Biggs's race-discrimination claim. The district court denied the motion, ruling that Defendants waived sovereign immunity by removing the case to federal court and that Biggs was not estopped from pursuing his race-discrimination claim because that issue wasn't litigated before the OAH.

Defendants later moved for summary judgment. In their initial brief in the district court, they focused only on the merits of Biggs's discrimination claim. In their reply brief, however, they repeated their earlier argument that they were immune from suit, pointing to *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2005), where we held that a state that has not consented to suit in its own courts does not waive sovereign immunity by removing the action.

The district court granted Defendants summary judgment. The court reasoned that the Department retained sovereign immunity in light of *Stewart*, and that Hooks retained sovereign immunity because Biggs's requested relief was retrospective in that it arose from his 2012 demotion, thereby falling outside *Ex Parte Young*'s scope. The court didn't address the merits of Biggs's discrimination claim and denied Biggs's motions to compel discovery as moot because he no longer had any pending claims.

This timely appeal followed. While it was pending, Biggs retired from the Department. Defendants moved to dismiss this appeal, arguing that Biggs's requested relief was mooted by his retirement. In response, Biggs filed a sworn declaration stating that he retired only because he no longer wished to serve as a correctional officer, and that he would promptly return to work if reinstated to his prior position as a correctional captain.

II.

The issues before us are whether Biggs's appeal is moot and, if not, whether the district court erred in granting summary judgment to Defendants on the bases that the

Department didn't waive sovereign immunity and that Biggs's claim against Hooks sought retrospective relief. We consider each in turn.

A.

We first consider whether Biggs's recent retirement moots his appeal. We have held that a post-demotion reinstatement request is moot where the employee retires and there is no evidence that he will seek reemployment in the future. *Parkman v. Univ. of S.C.*, 44 F. App'x 606, 622–23 (4th Cir. 2002) (per curiam). Here, however, Biggs has sworn that he would promptly return to work as a correctional captain if reinstated. He retired only because the work of a line correctional officer is too dangerous given his age. In this way, his retirement is akin to an involuntary one, and involuntary retirements are adverse employment actions under federal law. *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1375 (Fed. Cir. 2019); *see Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001) (stating that an agency can coerce an employee to retire by threatening an adverse action like demotion or by creating intolerable working conditions). Biggs's retirement is a consequence of the injury he suffered, not a remedy for it. This keeps his claim from being moot.

Denying Defendants' motion is also the equitable result. It would be unfair to require plaintiffs to work in physically demanding entry-level roles while their reinstatement claims are pending. Biggs filed his initial grievance seven years ago and this lawsuit three years ago. He is sixty years old. It is perfectly understandable that he no

7

longer wishes to be a line correctional officer, but would return to his prior, more senior role that carries a higher salary and better retirement benefits.

We therefore deny Defendants' motion to dismiss the appeal.

B.

We next consider whether the district court erred in granting summary judgment to the Department. Biggs argues that this was inappropriate for two reasons. The first is that the Department didn't raise the issue of sovereign immunity in its initial summary-judgment brief. This argument lacks merit. Even if the Department hadn't addressed sovereign immunity in *any* of its summary-judgment briefs, the district court would have been free to reconsider its earlier ruling on the issue (which came at the motion-to-dismiss stage) sua sponte. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983))).

Biggs's second argument is that the district court erred in concluding that the Department retained sovereign immunity despite removing this case to federal court. The Department is a North Carolina agency. "[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it." *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). Congress has not abrogated sovereign immunity for § 1983 suits, *see Quern v. Jordan*, 440 U.S. 332, 345 (1979), *overruled on other grounds by Hafer v.*

8

*Melo*, 502 U.S. 21, 27 (1991), so the question here is whether North Carolina has waived it. We review this issue de novo. *See Stewart*, 393 F.3d at 487.

In this circuit, a state's removal of a suit to federal court waives sovereign immunity only if the state has consented to suit in its own courts. *Id.* at 490. And under both federal and North Carolina law, a state must make a clear statement (like in a statute or a regulation) to indicate such consent. *Passaro*, 935 F.3d at 248 (addressing federal law); *Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill*, 567 S.E.2d 215, 217 (N.C. Ct. App. 2002) (addressing North Carolina law).

To show that North Carolina has consented to § 1983 suits for prospective injunctive relief, Biggs points primarily to two North Carolina cases. Neither supports his position. First, in *Corum v. University of North Carolina*, 413 S.E.2d 276 (N.C. 1992), the Supreme Court of North Carolina noted—despite granting summary judgment to the universities on other grounds, *see id.* at 289, 293–94—that sovereign immunity didn't bar a § 1983 suit for prospective equitable relief against state universities. *Id.* at 283. Citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n.10 (1989), the court stated that "when injunctive relief is being sought under section 1983 from State *institutions* or employees acting in their official capacities, such equitable actions are not barred." *Corum*, 413 S.E.2d at 283 (emphasis added).

We think North Carolina's highest court misread *Will*, which stated only that state officials—not state *institutions*—can be sued for equitable relief under § 1983. *See Will*, 491 U.S. at 71 n.10. *Will* was discussing the *Ex Parte Young* exception to sovereign immunity, which doesn't allow for suits against state agencies. *See, e.g.*, *Monroe v. Ark.*

9

*State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("While under the doctrine set forth in *Ex Parte Young* . . . state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies."). Allowing suits against state agencies is inconsistent with the rationale underlying *Ex Parte Young*, which is that suits against state officials who violate federal law are not suits against the state. *See Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013). And North Carolina courts haven't relied on this statement from *Corum*. Accordingly, *Corum* doesn't support Biggs's claim that North Carolina has consented to this type of suit against its agencies in its state courts.

The second case Biggs points to is *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm'n*, 443 S.E.2d 716, 721 (N.C. 1994), *superseded by statute*, The Workers' Compensation Reform Act of 1994, ch. 679, sec. 2.3, 1993 N.C. Sess. Laws (Reg. Sess. 1994) 394, 398, *as recognized in Mehaffey v. Burger King*, 796 S.E.2d 376, 380 (N.C. 2013). There, the Supreme Court of North Carolina recognized an exception to sovereign immunity where plaintiffs seek declaratory or injunctive relief against state agencies that act "in excess of the authority granted [to them] under [a] statute." *Id.* But that case is inapposite here, where Biggs is not claiming that the Department exceeded its state-law statutory authority, but rather brings a § 1983 claim for a violation of his federal rights.

Neither of these cases, nor the others Biggs cites, show that the Department has waived sovereign immunity. Because Biggs points to no clear statement by the Department waiving its immunity, we affirm the grant of summary judgment for the Department.

10

C.

We turn now to consider whether the district court erred in granting summary judgment to Hooks on the basis of sovereign immunity. This issue boils down to whether Biggs's claim falls within the *Ex Parte Young* exception, which "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not one against the state for purposes of the Eleventh Amendment." *Bland*, 730 F.3d at 390 (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010)). To determine if this exception applies, we consider "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation and quotation marks omitted).

Biggs contends that Hooks's refusal to reinstate him to his prior position is an ongoing violation of federal law and that compelling Hooks to do so would be prospective relief. The district court felt differently, holding that because the demotion occurred in 2012, "the heart of the dispute involves past conduct," and thus the requested relief would be retrospective. J.A. 1579.

Reviewing this issue de novo, s*ee Bland*, 730 F.3d at 373, we conclude that the district court erred. Every circuit, including this one, has held that claims for reinstatement to previous employment meet the *Ex Parte Young* exception. *See id.* at 390–91; *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) (collecting cases). As Hooks points out, most of these cases involved reinstatement after firing rather than demotion, but that makes no difference. *See Williams v. Kentucky*, 24 F.3d 1526,

11

1543–44 (6th Cir. 1994) (holding that reinstatement after demotion is prospective relief); *see also Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (stating that reinstatement is a prospective form of relief, but finding no ongoing violation because the relevant violation wasn't the demotion itself, but rather that the plaintiff didn't receive a pre- or prompt post-disciplinary hearing, and the plaintiff had since received a hearing).

Hooks asks that we affirm the grant of summary judgment on an alternative ground: collateral estoppel. He posits that Biggs's race-discrimination claim is precluded by the OAH's determination that Biggs was demoted for just cause. Implicit in that determination, Hooks argues, was a finding that Biggs wasn't treated disparately due to his race.

The district court rejected a version of this argument at the motion-to-dismiss stage. But Hooks didn't renew this issue in his summary-judgment motion, and the district court didn't address it in its decision granting Hooks summary judgment. Nor did the district court reach the merits of Biggs's discrimination claim, i.e., whether Biggs had adduced enough evidence of discrimination to go to the jury, even though that issue was fully briefed. Because we are a court of review, not first view, *Wood v. Milyard*, 566 U.S. 463, 474 (2012), we vacate the order below and remand for further proceedings in the district court.

We also vacate the district court's denial of Biggs's motion to compel discovery. On remand, the district court shall reconsider whether Biggs's motion is moot now that Hooks remains in this case.

12

## III.

For the reasons given, we deny Defendants' motion to dismiss this appeal, affirm the grant of summary judgment to the Department, vacate the grant of summary judgment to Hooks and the denial of Biggs's motion to compel discovery, and remand for further proceedings.

*MOTION TO DISMISS APPEAL DENIED;*
*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*