**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-4731**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

LUIS RAMIREZ AVILA,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:22-cr-00122-RJC-SCR-1)

---

Argued: January 28, 2025                    Decided: April 14, 2025

---

Before GREGORY, WYNN, and HEYTENS, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, which Judge Gregory and Judge Wynn joined.

---

**ARGUED:** Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** John G. Baker, Federal Public Defender, Ann L. Hester, Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

TOBY HEYTENS, Circuit Judge:

The Federal Sentencing Guidelines prescribe an enhanced offense level if "the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G. § 2G2.2(c)(1). Luis Avila asserts the district court committed procedural error in increasing his offense level under that provision because the court's factual findings were legally insufficient to support its application. We agree and thus vacate and remand for resentencing.

## I.

In 2021, Avila pleaded guilty to three counts of violating 18 U.S.C. § 2252A(a)(2) and (b)(1). Because his offenses involved "possessing material involving the sexual exploitation of a minor" within the meaning of Section 2G2.2 of the Federal Sentencing Guidelines, the probation officer calculated Avila's advisory guideline range using that provision. Section 2G2.2 starts with a base offense level of 22 for Avila's offenses of conviction, see U.S.S.G. § 2G2.2(a)(2), and outlines several fact-specific enhancements that together increased Avila's offense level to 35, see § 2G2.2(b).

Avila challenges what happened next. Section 2G2.2(c)(1)—captioned "Cross Reference"—directs district courts to use a different provision to calculate a defendant's offense level if certain requirements are satisfied and "the resulting offense level is greater" than Section 2G2.2 would otherwise prescribe. The probation officer concluded the cross-reference was triggered here because using the other provision would generate a higher offense level (38) and Avila's "offense involved causing, transporting,

2

permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G. § 2G2.2(c)(1). The probation officer recommended a three-level decrease for acceptance of responsibility, resulting in a guidelines range of 168 to 210 months.

Avila challenged the use of the cross-reference, both in written objections to the presentence report and during the sentencing hearing. His argument was "that nothing [he] did *caused* the sexually explicit material" to be created in the first place because the victims were sending the same videos to other people and the government could not prove that his requests were what prompted the victims to make them. JA 32 (emphasis added). In response, the government asserted "that 'caused' and 'involved' are quite broad terms" and that the evidence showed Avila "wanted videos of certain conduct and offered to pay, and did pay," one of the victims "for those videos." JA 40. "[B]y coercing and enticing [the victim] with the money," the government argued, Avila "caused [the victim] to make the videos and send the videos to him." *Id.*

The district court overruled Avila's objection and applied the cross-reference. The court's explanation reads, in full:

> I'm going to overrule the objection. I do think that the language of the cross-reference is quite broad involving causing, transporting, permitting, or offering, or seeking by notice or advertisement a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live, visual depiction of such conduct.
>
> It does appear to the Court that this is exactly the offense conduct involved in the factual basis, that there was money offered for specific conduct that meets the elements of the cross-reference (c)(1).

3

JA 40−41. The district court sentenced Avila to 132 months of imprisonment followed by 30 years of supervised release.

## II.

The district court procedurally erred in sentencing Avila because the court's factual findings were legally insufficient to support application of the cross-reference. The proper interpretation of a Guidelines provision is a legal question that we review de novo. See *United States v. Mitchell*, 120 F.4th 1233, 1237 (4th Cir. 2024). Applying that standard, we conclude that what the district court found—offering money for specific conduct—and "causing" that conduct to happen are different things and that proving the former is not enough to prove the latter. We thus vacate the district court's judgment and remand for resentencing.

The government's concessions streamline our task. Although the cross-reference is triggered by four actions—"causing, transporting, permitting, or offering or seeking by notice or advertisement," U.S.S.G. § 2G2.2(c)(1)—the government admits it only raised a "causing" theory before the district court and is only raising such a theory before us. See Oral Arg. 21:50−22:00. We thus begin by determining what it means for an offense to "involve[] causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." U.S.S.G. § 2G2.2(c)(1).

Section 2G2.2(c)(1) does not define "causing," so we look to "the[] ordinary, contemporary, common meaning" of that term. *Johnson v. Zimmer*, 686 F.3d 224, 232 (4th Cir. 2012) (quotation marks removed). The parties agree that "cause" means to "make (something, typically something bad) happen" and that the "cause" of something is "a

4

person or thing that gives rise to an action, phenomenon, or condition." Cause, *New Oxford American Dictionary* 276−77 (3d ed. 2010). The government also agrees that—at least in common parlance—a person's action cannot "cause" something that happened before that action was taken. See Oral Arg. 22:45−23:22. Thus, the question before us is whether the district court found that at least one victim made sexually explicit videos after and in response to Avila's request.

We conclude the district court made no such finding. The court described "the language of the cross-reference" as "quite broad," quoted the entire provision almost verbatim, and then stated: "It does appear to the Court that this is exactly the offense conduct involved in the factual basis, that there was money offered for specific conduct that meets the elements of the cross-reference (c)(1)." JA 40−41. But the district court said nothing else. And the fact that Avila offered money for specific conduct does not establish that any victim made a video after—much less in response to—Avila's requests.

When asked about this point at oral argument, the government replied by citing this Court's statement in *United States v. Gross*, that, "[a]bsent evidence to the contrary, we presume that the district court knew the law and applied it in making its decisions." 90 F.4th 715, 721 (4th Cir. 2024). But that presumption applies when there is no dispute about what "the correct legal standard" is and the disagreement involves whether the district court said enough to make clear it was applying the right standard. *Id.* This case, in contrast, presents a situation in which *Gross* indicates no such presumption is appropriate: one where a district court's explanation for its ruling suggests "it was relying on a rule of general

5

application that differed from the one set out in the Guidelines." *Id.*

The government also argues that "[t]he facts in the presentence report the district court properly adopted" would have supported a "finding" that at least one victim made at least some videos after and in direct response to Avila's requests. U.S. Br. 11. But whether the district court could have made a finding that would have survived appellate review is different from whether the court actually made that finding. Just as "we are not permitted to guess at the district court's rationale by searching the record for statements that might explain a sentence," *United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019) (alterations and quotation marks removed), we may not affirm a district court's judgment based on factual findings the court never made. And because "we are a court of review, not first view," *Biggs v. North Carolina Dep't of Pub. Safety*, 953 F.3d 236, 243 (4th Cir. 2020), we vacate and remand for resentencing without considering whether the record could have supported the required finding under the correct legal standard.

*    *    *

A finding that Avila offered money for videos depicting specific conduct does not establish that he caused anyone to engage in that conduct within the meaning of Guidelines § 2G2.2(c)(1). We thus vacate the district court's judgment and remand for resentencing.

*SO ORDERED*